UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARNITA PROCTOR,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TRANS UNION, LLC,**<br><br>**Defendant.** | Civil Action No. 23-226 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Charnita Proctor has now developed a litigation record almost as lengthy as the credit reports that have instigated it. In this, the second of her three Fair Credit Report Act and D.C. Consumer Protection Procedures Act suits involving Defendant Trans Union, she continues to fault various lending institutions and reporting agencies for inaccuracies in her credit report. After a series of dismissals and settlements with other Defendants, only Trans Union remains. It now moves for summary judgment on both Proctor's Complaint and its own Counterclaim, arguing that all of Proctor's claims against it are precluded by a prior settlement agreement between the two parties and that, regardless, she has not met her burden under the FCRA. Plaintiff — who has been at best an occasional presence throughout this litigation — has filed no opposition, thus ceding the field of factual disputes to Trans Union. This absence, coupled with Defendant's legal position, leads the Court to grant the Motion.

1

I.     **Background**

As this is not the first time the two parties have met, the Court will start at the beginning. On May 31, 2018, Plaintiff filed a FCRA case against Trans Union and two other credit-reporting agencies in D.C. Superior Court. See ECF No. 58-2 (Decl. of Scott Brady), ¶ 3. Her complaint alleged that the defendants were knowingly reporting "patently inaccurate information" regarding her Capital One account and had failed to adequately investigate her claims, see ECF No. 58-3 (Sup. Ct. Compl.), ¶¶ 12–34, thus violating several provisions of the FCRA. See id., ¶¶ 34–75.

That lawsuit was removed to this district and eventually resulted in a settlement with Trans Union. See Brady Decl., ¶¶ 3–4; ECF No. 58-4 (Agreement). As part of that settlement, signed on February 15, 2019, Proctor agreed to discharge Trans Union "from any and all claims . . . which Plaintiff had, now has, or may have" against the company, including "any claim based directly or indirectly upon facts, events, transactions[,] or occurrences related" to the lawsuit, any claim that "could have been asserted" in the lawsuit, and any claim that "relate[d] in any manner to Plaintiff's credit history information as reported by Trans Union . . . prior to the execution of this Agreement." Agreement, ¶ 4. For good measure, the agreement attached a Trans Union consumer disclosure listing all other accounts that Plaintiff believed were inaccurate, and the parties stipulated that "no information contained within the Disclosure, including but not limited to the information associated with the Disputed Accounts, will provide the basis for any future claims against Trans Union." Id., ¶ 5. The parties also agreed that Trans Union would be entitled to seek attorney fees for any breach of the agreement. Id., ¶ 11.

Imagine Defendant's surprise, then, to encounter the current suit, which seeks to assert the very claims barred by the agreement. Compare ECF No. 1-1 (Compl.), ¶ 15, with Sup. Ct.

Compl., ¶¶ 6–25 and Agreement, ¶ 5; see ECF No. 59 (Statement of Material Facts), ¶¶ 12–15 (summarizing similarities).  As relevant here, Plaintiff alleges that Trans Union violated the FCRA by reporting inaccurate information relating to her Ally Financial, Comenity Bank, and Portfolio Recovery Associates accounts.  See Compl., ¶ 15; SMF, ¶¶ 12–15.  Trans Union, in turn, has denied Proctor's allegations and filed a Counterclaim against her for breaching the settlement agreement on the ground that the reports concerned debts incurred prior to the agreement.  See ECF No. 30 (Answer and Counterclaim).  Proctor also initially named various other Defendants in relation to different accounts, but those claims have either been dismissed, see Minute Order of May 23, 2023 (dismissal for failure to effect service); ECF Nos. 36, 40, 43 (voluntary dismissals), or settled, see ECF Nos. 48, 49, leaving Trans Union standing alone on the pitch.  Those developments also vitiated all but the first two counts, which respectively allege violations of 15 U.S.C. § 1681e(b), for reporting inaccurate credit information, and § 1681i(a), for failing to adequately investigate her dispute.  See Compl., ¶¶ 35–56.

   After the Court entered a Scheduling Order in this case, see ECF No. 39, Plaintiff then filed yet another state-court suit listing Trans Union as a defendant, which was removed to this district in January 2024 and is currently before Judge John D. Bates.  See Proctor v. Transword Systems, Inc., No. 24-102, ECF No. 1-2 (Third Compl.) (D.D.C.); id., ECF No. 1 (Notice of Removal).  That complaint charges Trans Union with largely the same conduct, but it adds allegations regarding additional credit-report inaccuracies.  Compare Third Compl., ¶¶ 10–90 (claiming inaccuracies regarding Plaintiff's accounts with PenFed, Transworld Systems, Hunter Warfield, Financial Management Solutions, First Savings Bank, Ally, Comenity, MOHELA, and PRA), with Compl., ¶ 15 (same as to Ally, Comenity, and PRA).  The Court subsequently ordered Proctor to dismiss Trans Union from that third lawsuit and amend her Complaint here to

3

"include claims from this case and the subsequently filed one." See Minute Order of Feb. 6, 2024. Plaintiff dismissed Trans Union but failed to timely amend her Complaint, blowing past two deadlines to do so and only belatedly filing a Motion for Leave to Amend three weeks late. See Minute Order of Feb. 23, 2024; ECF No. 53 (Mot. to Amend.). The Court accordingly denied her Motion. See ECF No. 56 (Order of Apr. 25, 2024).

At the close of discovery, Trans Union filed this Motion for Summary Judgment. See ECF No. 58 (MSJ). Plaintiff, continuing to "falter[]" in exhibiting the "[d]iligence" necessary to prosecute her case, see Order of Apr. 25 at 3, never responded to that Motion or otherwise disputed any of Defendant's factual assertions.

## II. Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it can affect the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In light of this requirement, and pursuant to Local Civil Rule 7(h) and Federal Rule 56(e), the court, in resolving summary-judgment motions, "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1); see Fed. R. Civ. P. 56(e)(2). Plaintiff here submits neither an opposition nor any record evidence whatsoever. The Court will consequently consider Trans Union's evidence as uncontroverted. See Winston & Strawn, LLP v. McLean, 843 F.3d 503, 509 (D.C. Cir. 2016).

### III.    Analysis

Accepting Trans Union's supported factual assertions as true, its Motion must be granted for two independent reasons: first, Proctor's claims are precluded by the prior settlement agreement, and second, even if they were not, she has not carried her burden to show that a jury-worthy issue exists as to whether the disputed accounts were inaccurate (Count I) or Trans Union failed to adequately investigate her claims (Count II). The Court will discuss each issue in turn.

A. Preclusion

Because "[a]n agreement to settle a legal dispute is a contract," courts in this Circuit determining the preclusive effect of such agreements apply "familiar principles of contract law." Village of Kaktovik v. Watt, 689 F.2d 222, 230 (D.C. Cir. 1982). Such principles are particularly relevant when, as here, a "court [was] not asked to approve the settlement in any way." Sirmans v. Caldera, 138 F. Supp. 2d 14, 20 (D.D.C. 2001) (explaining that, where courts approve settlement agreement, they depart from strict contractual interpretation in determining its preclusive effect). A settlement agreement therefore precludes litigation of subsequent claims if its terms fairly indicate the intent of the parties to do so. See id. at 20–21.

The application of those principles here forecloses Proctor's current claims against Trans Union. The settlement agreement prevents her from pursuing "any claim" "relate[d] in any manner" to her "credit history information as reported by Trans Union . . . prior to the execution of this Agreement." Agreement, ¶ 4. This suit, however, concerns precisely such claims — namely, Plaintiff's allegations that her Trans Union credit report has reported inaccurate information relating to her Ally, Comenity, and PRA accounts. As to the first two, the agreement specifically named the Ally and Comenity accounts as "Disputed Accounts" that could not "provide the basis for any future claims against Trans Union." Id., ¶ 5; see SMF, ¶ 13. As Defendant explains, "These are the same accounts that . . . form[] the basis for [Plaintiff's] claims against Trans Union" in the current lawsuit, see SMF, ¶ 13, and they are thus easily within the agreement's terms.

The PRA account is slightly trickier. It apparently corresponds to a debt purchased from a Capital One account that was reporting at the time of the agreement. See ECF No. 58-12 (Decl. of Joy Taylor), ¶¶ 6–7. The wrinkle here is that, as best the Court can tell, the PRA

6

account did not exist at the time of the prior agreement.  See, e.g., SMF, ¶ 14 ("There was a PRA account reporting at the time of the Agreement, but it was related to an unpaid debt to Comenity, rather than Capital One.").  Defendant nonetheless argues that the PRA account at issue falls under the terms of the settlement because Plaintiff agreed that the corresponding Capital One account, "like all [the] others," "would not provide the basis for future claims against Trans Union."  Id., ¶ 15.

The Court agrees with Trans Union for two reasons.  First, the terms of the agreement are capacious enough to support Defendant's interpretation.  Proctor agreed that she would not bring "suits of any kind or nature" that were "in any manner connected with any . . . facts, events, transactions, or occurrences related" to her Trans Union credit reports prior to the agreement.  See Agreement, ¶ 4.  That expansive language is not limited to only those accounts that existed at the time of the agreement.  Rather, it would appear to bar litigation over any debts that were then extant and that were represented on Proctor's credit report, even if the account reporting that debt has since shifted from the original debtor (Capital One) to a collection agency (PRA), as Trans Union states occurred here.  See SMF, ¶ 15; MTD at 4.

Second, Plaintiff herself does not appear to dispute that she is breaking the terms of the agreement.  When asked why she was bringing a lawsuit based on the same accounts that she had previously agreed could not form the basis of any future litigation, Proctor did not dispute the premise; rather, she responded that she did so "[b]ecause apparently there are still errors in accounting" and she wanted "everybody . . . to be on the same page." ECF No. 58-5 (Depo. of Charnita Proctor) at 22:22–25.  After it was pointed out that nothing in the agreement required Trans Union to fix any existing errors, Proctor again indicated that she acknowledged she was breaking the agreement.  Id. at 23:20–22 ("I understand about not suing Trans Union, but Trans

7

Union has not fixed the issue."). She then stated that she did "[n]ot necessarily" remember that she had signed the settlement agreement, but, "still" she had to "fight to get justice for what [she] need[ed] done." Id. at 24:3–5. Plaintiff thus acknowledges that the current lawsuit breaches the terms of the settlement agreement.

Contrary to Proctor's assumption otherwise, moreover, the agreement nowhere requires Trans Union to fix any ongoing inaccuracies. Rather, Plaintiff agreed to give up her "legal right to determination on the merits" of her dispute in return for Trans Union's "binding promise to pay a sum certain." Village of Kaktovik, 689 F.2d at 230; see Agreement, ¶ 2. Having seen no evidence that Defendant neglected to tender the agreed-upon amount, the Court concludes that it is entitled to seek enforcement of the agreement through judgment on the current suit.

B. Merits

Even if the settlement agreement did not bar it, Plaintiff's suit would not make it out of the gate. To survive summary judgment on Count I, she was required, as a threshold condition, to present evidence from which a reasonable jury could infer that "the credit reporting agency reported inaccurate or misleading information." Wilson v. Prudential Fin., 603 F. Supp. 2d 163, 167 (D.D.C. 2009); see also Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 40 (D.C. Cir. 1984) (consumers may bring suit "only if a credit reporting agency issues an inaccurate report on the consumer").

Proctor cannot meet even that initial requirement. The only argument she makes in this respect is that she purportedly signed various settlement agreements with the creditors, in which each company agreed to stop reporting certain accounts to credit bureaus. See SMF, ¶¶ 22–44. There is no evidence, however, that the Ally settlement, which was entered into after this litigation commenced, was predicated on an admission that the account itself was inaccurate. Id.,

8

¶¶ 22–23.  The same goes for the Comenity settlement, which, besides, appears to have concerned a Comenity account <u>different</u> from the one at issue in this litigation.  Id., ¶¶ 30–36.  And the settlement relevant to the PRA account is, in fact, an agreement Proctor signed with Capital One that did not even address the debt at issue.  Id., ¶¶ 38–41.  This is not the stuff of which jury-worthy suits are made.  Nor is the Court inclined generally to impute to settlement agreements an admission of wrongdoing unless the terms so state, and no such claim has been made here.  <u>See</u> <u>Sirmans</u>, 138 F. Supp. 2d at 20 ("[T]he proper interpretation of the [settlement] agreement is along strict contractual lines."); <u>see also</u> <u>American Security Vanlines, Inc. v. Gallagher</u>, 782 F.2d 1056, 1060 (D.C. Cir. 1986) ("Few public policies are as well established as the principle that courts should favor voluntary settlements of litigation by the parties to a dispute.").

As for Count II, which alleges violations of various provisions requiring credit-reporting agencies to adequately investigate, report, and respond to any disputes, <u>see</u> Compl., ¶¶ 46–56; 15 U.S.C. § 1681i(a)(1)–(5), the best Proctor has mustered is that she mailed a letter to Trans Union in October of 2022 complaining of the disputed accounts.  <u>See</u> SMF, ¶ 52.  Trans Union apparently responded to this letter by asking Plaintiff to verify her address because the letter's return address differed from Proctor's primary address in Trans Union's file.  Id., ¶¶ 53–55.  Plaintiff's only response was to file this Complaint shortly thereafter.  Id., ¶ 56.  Those facts fall far short of what would be required to create a genuine dispute of material fact over whether Trans Union failed to investigate Proctor's claims in accordance with the FCRA.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Trans Union's Motion for Summary Judgment on Plaintiff's claim and on liability for the Counterclaim, and it will set a status

hearing to discuss how to proceed regarding damages. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: September 19, 2024